## MICAH R. BALL *versus* JOHN DIVOLL.

The personal property of a debtor attached at the suit of several creditors, was sold by the attaching officer, under *St.* 1822, *c.* 93, [Revised Stat. *c.* 90, § 57.] It was subsequently agreed between the debtor and such creditors, with the knowledge of the officer, that none of the actions should be entered in court, and that the proceeds of the sale should be applied by the officer to the payment of the claims of such creditors in the order of their respective attachments; and the actions were accordingly not entered. It was *held,* that the officer, who had paid the claims of some of such creditors, could not recover of another of them the price of some of the property purchased by such creditor at the sale, it appearing that the claim of the creditor exceeded such price.

ASSUMPSIT, originally brought before a justice of the peace, to recover the sum of $17·25 with interest, being the price of a pair of steers alleged to have been sold by the plaintiff to the defendant.

At the trial in the Court of Common Pleas, before *Strong* J., it appeared, that the plaintiff, in January 1830, as a deputy sheriff, attached a large amount of personal property belonging to Levi Nichols, upon writs issued in favor of the defendant and several other creditors of Nichols ; that soon after these attachments were made, it was agreed between such creditors and Nichols, that the property should be sold by auction by the plaintiff, as the attaching officer, under *St.* 1822, *c.* 93 ; that the sale took place on February 8, 1830, and before the return day of the writs ; that at this sale, the defendant bought the steers for the sum of $17·25 ; that by a subsequent agreement between such creditors and Nichols, none of the actions were entered, and no judgments were ever obtained ; that the proceeds of such sale exceeded the sum of $700 ; that the plaintiff applied so much of the proceeds as was necessary to pay the demands of the creditors whose attachments were previous to that of the defendant, and of two of those whose attachments were subsequent ; and that after the sitting of the court at which the writs were returnable, the plaintiff had accounted with Nichols for all the property sold, except about the sum of $48, which was made up of the sum of $25 received by the defendant in payment for some of the property sold, the price of the

steers, and some small articles of property retained by Nichols himself.

It did not appear in evidence, that Nichols had ever expressly requested the plaintiff to pay him the price of the steers in question, or that he ever intended to require payment of him. There was still due from Nichols to the defendant, a larger amount than $17·25.

The defendant offered to prove, that, at the time when it was agreed between the creditors and Nichols, that the actions should not be entered in court, there was also an agreement or understanding between them, that the proceeds of the sale of the property attached should be applied by the plaintiff to the payment of the debts of the several creditors, according to the priority of their attachments ; and that the plaintiff had knowledge of this agreement. The plaintiff objected to the introduction of this evidence ; but it was admitted.

The jury were instructed, that if they were satisfied, that tnere was such an agreement or understanding between the creditors and Nichols, and that the plaintiff knew of it or had such notice as would induce a reasonable man to act, it would constitute a good defence.

The jury returned a verdict for the defendant. To the admission of the evidence objected to, and to the instructions to the jury, the plaintiff excepted.

*Oct. 1st.*    *Torrey* and *Wood*, for the plaintiff, cited to the point, that the proceedings of an officer should be in writing, *Hammatt* v. *Wyman*, 9 Mass. R. 138 ; that the officer is not to be considered as the agent of the attaching creditor, and *a fortiori* not as the agent of the debtor, *Wilder* v. *Bailey*, 3 Mass. R. 296 ; that the attaching creditor has no control over the property attached, even where an execution has issued, *Blake* v. *Shaw*, 7 Mass. R. 506 ; and that funds in the hands of an officer are not liable to the trustee process, *Wilder* v. *Bailey*, 3 Mass. R. 289 ; *Chealy* v. *Brewer*, 7 Mass. R. 259 ; *Brooks* v. *Cook*, 8 Mass. R. 246.

*Washburn*, for the defendant, to the point, that independently of any agreement, the defendant would be accountable to Nichols and not to the plaintiff, upon the dissolution of the

attachments, cited *Clap* v. *Bell*, 4 Mass. R. 100 ; that even in those cases where an agent has an interest and may sue in his own name, the principal may interpose, *Williams* v. *Millington*, 1 H. Bl. 81 ; *Kelly* v. *Munson*, 7 Mass. R. 319 ; that the evidence proved an assignment of the money in the hands of the plaintiff by Nichols to the defendant, and that upon notice thereof to the plaintiff, he became accountable to the defendant, *Curtis* v. *Norris*, 8 Pick. 282 ; *Cole* v. *Cushing*, 8 Pick. 48 ; *Tatlock* v. *Harris*, 3 T. R. 180 ; that, as the money was in the hands of the plaintiff it was not necessary that there should be an agreement by him to pay it over to the defendant, the law establishing a privity between them, *Ellis* v. *Essex Merrimac Bridge*, 2 Pick. 248 ; *Ellsworth* v. *Brewer*, 11 Pick. 316 ; *Hall* v. *Marston*, 17 Mass. R. 578 ; *De Wolf* v. *Chapin*, 4 Pick. 59.

PUTNAM J. delivered the opinion of the Court. No objection is made to the sale by the plaintiff, as the attaching officer, upon mesne process ; and if the attachments had not been dissolved, the purchasers would have been liable by law to pay the auction price of the goods to the officer, to be distributed among the judgment creditors according to the priority of attachments. But by the consent of all the attaching creditors their writs of attachment were not entered at the court to which they were returnable ; and so the attachments were dissolved. But that arrangement was made in consideration of an agreement between Nichols, the debtor, and all the attaching creditors, with the knowledge of the plaintiff (the attaching officer), that the proceeds of the property sold should be applied to the payment of the claims of the attaching creditors according to the order of their attachments. And the case finds, that the agreement was carried into effect by the payment by the plaintiff, to some of the attaching creditors, but not to the defendant ; and the plaintiff in that way accounted with the debtor, Nichols, for so much of the proceeds of the property sold.

But the case finds, that the defendant, Divoll, was a purchaser at the auction, of a pair of steers belonging to Nichols, for $17·25, which is less than the amount of his just demand against Nichols. If the agreement between Nichols and the

*Bal v. Divoll.*

*Oct. 3d.*

creditors should be performed, Divoll would be entitlea not only to the $17·25, but to a larger sum. Why then should Divoll be compelled to pay that sum to the plaintiff, who would be obliged by law to repay it, according to the agreement of the creditors with Nichols ; and which agreement (as before observed) has been executed by the plaintiff in all respects excepting only so far as it regards the defendant ? It does not appear, that the plaintiff has any claim upon the fund, or any other claim against the defendant, excepting only this alleged claim for the price of the steers ; and it is found, that Nichols has agreed, not only that the price of the steers, but a greater sum, should be paid to Divoll. If the plaintiff should charge the price of the cattle to Nichols, as having been paid to Divoll, it would be clearly a lawful accounting for so much of the proceeds of the property sold

It has been held, that a debtor may sell his goods which are under attachment, and in the possession of the officer, and the purchaser takes them subject to the lien. If the lien should cease, the title of the vendee becomes absolute. Now the proceeds of goods sold upon mesne process, stand chargeable to and available by all parties in interest, in the same manner as the goods themselves were. If the debtor should pay the debt, or if by any other way or means the attachment should be dissolved, it is perfectly clear that the attaching officer would not have any right to interfere with the property, excepting only so far as he may have a lien for expenses for keeping or other lawful charge for his services in attaching the same. We have said, that the case does not find, that the plaintiff has any claim or lien upon the steers, or on the price of them. It was therefore lawful for the debtor to sell the steers, or direct the proceeds to be paid to any person, as he pleased, upon tne dissolution of the attachment by the agreement of the attaching creditors. And he might, if he pleased, order the proceeds to be paid to the attaching creditor, on account of his demand. And any interference of the officer after such dissolution, without any new authority or writ, and without any claim for services and keeping and attaching, would be without right. After the dissolution of the attachment and the agreement of the debtor and credi-

tors, and the undertaking of the plaintiff to carry the agreement into effect, he became a mere agent. His official character then ceased. He was acting as a private individual, and was bound to pay according to the direction of the general owner. Now it appears, that the parties who are interested, are content that the money should remain where it 's; and we think it is not for the agent to interpose, without having any interest whatever in the concern. If the plaintiff was to be considered as an agent for one or both of the parties in interest, it would seem that they might discontinue their authority to him, in order that they might manage the matter in their own way. If the plaintiff was agent for Nichols, the general owner, to collect money of Divoll, the purchaser, it would be lawful for Nichols to collect it himself, in the absence of any agreement to the contrary, or to let Divoll retain the money towards payment of a debt due to him from Nichols, according to the agreement. If he was agent for Divoll to receive the proceeds, and pay the same over to him, the money is already just where it should be according to the agreement of the parties in interest. It is there by the consent of the general owner.

It has been held in *Phillips* v. *Bridge*, 11 Mass. R. 242, that a receipter of goods is not liable upon his contract to deliver them to the attaching officer, unless a demand should be made upon him before the dissolution of the attachment. The reason is very obvious; for after the dissolution of the attachment the officer had no right to control the goods. He became accountable to the debtor. But inasmuch as the debtor had the possession of the goods already, it would have been somewhat more than a useless formality to compel the receipter to deliver the goods to the officer, to the end that he should deliver them to the debtor.

So, in the case at bar, after the dissolution of the lien of the attaching officer he had no interest in the goods. But he was to apply the proceeds according to the direction or order of the general owner. And the plaintiff has no more reason or legal right to recover the money in this case, than Phillips had in the case cited; for if he recovered, he could not hold the property, but eventually the law would cause it to be placed in the hands of the defendant, where it now is.

Ball
*v.*
Divoll.

It would seem to be very futile and inexpedient to compe the defendant to pay over the same to the plaintiff, and subject the plaintiff to an action in the name of Nichols or otherwise, *but for the use of Divoll,* to refund the money. The plaintiff has no interest in the subject matter of this suit, and is not accountable even to the debtor, inasmuch as the property has been already appropriated according to his appointment.

It appears to us, that the instruction of the presiding judge of the Court of Common Pleas was right; and that the evidence which was offered, did in law furnish a sufficient defence against this suit.

*Judgment of the Court of Common Pleas affirmed.*